IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN  DIVISION

THOMAS J. MUSTICCHI, Individually     *
and on behalf of all other similarly     *
situated Little Rock, Arkansas police     *
officers,     *
    *       No.  4:08cv00419 SWW
          Plaintiff,     *
    *
vs.     *
    *
THE CITY OF LITTLE ROCK,     *
ARKANSAS,     *
          Defendant.     *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thomas J. Musticchi, a police officer within the City of Little Rock, Arkansas

Police Department ("LRPD"), brings this collective class action against the City of Little Rock

("City") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., for the

alleged failure of the City to pay LRPD officers properly time and one-half their regular rates of

pay for all hours worked in excess of forty hours per week. Before the Court is the City's motion

for summary judgment and Plaintiff's motion for partial summary judgment. After careful

consideration, and for the reasons that follow, the Court grants the City's motion for summary

judgment except as to the travel time and meal break claims.  The Court will withhold ruling on

those claims until Plaintiff has had an opportunity to file a brief in response to Defendant's

motion for summary judgment on those claims.  The Court denies Plaintiff's motion for partial

summary judgment and motion for voluntary dismissal.

**I. Background**

The LRPD requires patrol officers to wear a "Class B" uniform compromised of the

following elements: an undershirt or turtleneck, a uniform shirt, ballistic vest, shoulder patch,

shoes or boots, trousers, socks, badge, name tag and a Sam Browne duty belt. Along with their uniform officers are required to have certain equipment items which attach to their duty belt including a gun holster, gun, ammunition, ammunition holders, clips, or magazines, handcuffs, handcuff case, tear gas canister, baton ring, radio, and a radio case. The LRPD requires officers to keep their uniforms neat, clean and in good repair but gives the individual officer discretion as to how to maintain their uniform.  The LRPD can inspect an officer's equipment at the beginning of a shift or at the discretion of the supervising officer.  The parties disagree about the time it takes to don the uniform however, both agree that the LRPD does not  require officers to change into or out of their uniform at a particular place. However, officers nearly universally don and doff their uniforms and equipment at home.

Plaintiff bring this lawsuit individually and on behalf of all other similarly situated individuals, charging that officers worked in excess of forty (40) hours without receiving overtime compensation since they were not paid for donning and doffing their uniform at the beginning and end of every shift. Plaintiffs also allege that officers are entitled to overtime for maintaining equipment including but not limited to polishing their shoes and duty belts, maintaining their duty weapons and ballistic vests and for the cleaning of their safety vests and radios. Plaintiffs claims that Defendant was well aware that officers were spending large amounts of time performing primary work duties without receiving compensation. Plaintiffs allege that this violates the FLSA. By way of relief, Plaintiffs seeks compensatory damages and court and attorney's fees.

Defendant moves for summary judgment with respect to Plaintiffs' claims pursuant to § 201 on the grounds that donning and doffing the uniform and its maintenance are preliminary

and postliminary activities and therefore are not compensable under the Portal-to-Portal Act, 29 U.S.C. § 251, *et. seq.* Defendant further alleges that changing into and out of the uniform is not compensable under 29 U.S.C. § 203(o) and that certain activities performed by officers are de minimis and therefore not compensable.  Finally, Defendant alleges that the statute of limitations precludes recovery by certain individual plaintiffs.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

 "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Matsushita*, 475 U.S. at 587

3

(citations omitted).

### III. Analysis

The FLSA requires that "employers must pay employees for all hours worked." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003) (internal quotation marks omitted), *aff'd on other grounds*. *IBP v. Alvarez,* 546 U.S. 21 (2005). The Supreme Court has long described work as a "physical or mental exertion . . . controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." *Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944). The Portal-to-Portal Act of 1947 states that employers are not required to compensate their employees for activities "which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a).

The Supreme Court first addressed whether the donning and doffing of a uniform is compensable in *Steiner v. Mitchell*, 350 U.S. 247 (1956). During the course of performing their job, workers in a battery plant were exposed to toxic materials and therefore were "compelled by circumstances, including vital considerations of health and hygiene to change clothes and to shower in facilities which state law requires their employer to provide." *Id.* at 248. Since showering and changing were "integral" and "indispensable" to the workers' principal activity the Supreme Court held that they were entitled to compensation for the activities under the FLSA. *Id.* at 256.

The issue of whether an employee must be compensated for changing was further addressed by the Ninth Circuit in *Alvarez, supra.* Workers at a meat processing plaint were required to change into their specialized protective clothing and safety gear in locker rooms on the plant's premises. The Ninth Circuit held that since "the donning and doffing of this gear on

the ... plant's premises is required by law, by rules of IBP, and by the nature of the work, this

donning and doffing is necessary to the principal work performed." *Alvarez*, 339 F.3d at 903.

(internal quotation marks omitted). The court added that in order for an activity to be considered

"integral and indispensable" it must be done for the benefit of the employer and be necessary for

the principal work the employee performs. *Id.* at 902-03.

Following *Steiner*, the Department of Labor ("DOL") issued guidelines discussing when

the changing of clothes is integral to an employee's activity and therefore compensable under the

Portal-to-Portal Act. The DOL stated that:

> if an employee in a chemical plant, for example, cannot perform his principal activities
> without putting on certain clothes, changing clothes on the employer's premises at the
> beginning and end of the workday would be an integral part of the employee's activity.
> On the other hand, if changing clothes is merely a convenience to the employee and not
> directly related to his principal activities, it would be considered as preliminary or
> postliminary activity rater than a principal part of the activity.

29 C.F.R. § 790.8(c) (footnote references and internal quotation marks omitted). While this

policy statement is not entitled to deference it is entitled to respect so long as it has the "power to

persuade." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000).

**A. The donning and doffing of police uniforms and protective gear are not compensable under the Portal-to-Portal-Act since neither the law nor the police department requires officers to change at the police station.**

Neither the Eighth Circuit nor any district court in the Eight Circuit has addressed

whether the donning and doffing of police uniforms is compensable. However, the Ninth Circuit

has held that the donning and doffing of  police uniforms is not compensable under the FLSA. In

*Bamonte v. City of Mesa*, 598 F.3d 1217 (9th Cir. 2010) and  *Dager v. City of Phoenix*, 2010 WL

2170992 (9th Cir. 2010), the Ninth Circuit held that because neither the law nor the cities

mandated that the police officers don and doff on the employers' premises the activity was not

compensable under the FLSA.[1]   The court in *Bamonte* stated that the issue is not whether "the uniform itself or the gear itself is indispensable to the job-they most certainly are-but rather, the relevant inquiry is whether the nature of the work requires the donning process to be done on the employer's premises." *Bamonte*, 598 F.3d at 1228 (quoting *Abbe v. City of San Diego,* 2007 WL 4146696, at *7 (S.D. Cal 2007) (emphasis omitted). This is helpful precedent in the present case.

Neither the law nor the LRPD requires officers to change at the station. Instead, the LRPD gives officers the option to change at home or at changing facilities provided by the LRPD.  However, most officers choose to don and doff at home.  Def's. Mot. Summ. J., Ex. B (Thomas Aff.) at ¶ 11. Plaintiff argues that the uniform is an integral and indispensable element of being a patrol officer and that the changing of the uniform is done for the benefit of the LRPD. However, Plaintiff can show no evidence why the process of donning and doffing of the uniform and safety equipment must be done at work in order to ensure that an officer can effectively do his job. Undoubtedly, the requirement of showering and changing *at work* in order to preserve health and safety, *see Steiner* 350 U.S. at 247, and the donning and doffing of specialized equipment *at work* for sanitation purposes, *see Alvarez*, 339 F.3d at 903, are an integral and indispensable part of the principal activity.  These requirements are not only mandated by law but were done for the benefit of the employer and employee. In comparison, the process of LRPD officers donning and doffing the uniform *at work* does not ensure compliance with the law or give any benefit to the employer. Instead, officers acknowledge that when they or their fellow officers do choose to change at the station they primarily do so for

---

[1]Several other district courts have also held that failure to compensate officers for donning and doffing is not a violation of the FLSA. *See, Constant v.* Webre, 2010 WL 2243641 (E.D. La. 2010); *Martin v. City of Richmond*, 504 F. Supp. 2d 766 (N.D. Cal 2007); *Abbe v. City of San Diego, 2007 WL 4146696* (S.D. Cal 2007).

their own benefit.  *See* Def's. Mot. Summ. J., Ex. F (Musticchi Dep. 34:11-19)(gun belt uncomfortable to put on at home, tears up the seat in his car;) Ex. H (Winfrey Dep. 21:22, 22:1-5)(don and doff after using the station gym). *Cf.*, *Bamonte*, 598 F.3d at 1226 (officers "urged compensability primarily for reasons that were of sole benefit to employee").

While Plaintiff also argues that the LRPD restricts officers' travel once they are in uniform this fact is also not persuasive. Officers are not precluded from changing at the station and may do so if they want to go out into the community after their shift. In addition, if an officer performs law enforcement duty while traveling to and from work while in their uniform they are entitled to overtime compensation.  *See* Def's. Mot. Summ. J., Ex. B (Thomas Aff.) at ¶ 15.

In making his argument Plaintiff heavily relies on *Lemmon v. City of San Leandro*, 538 F. Supp. 2d 1200 (N.D. Cal 2007) and *Nolan v. City of Los Angeles*, 2009 U.S. Dist. LEXIS 70764 (C.D. Cal. 2009).  However, the Court not only believes that the courts in *Nolan* and *Lemmon* erred in granting compensation for donning and doffing uniforms but also that these cases are no longer persuasive in light of the Ninth Circuit's decisions in *Bamonte* and *Dager*.

Furthermore, compensating LRPD officers for donning and doffing uniforms would greatly undermine the purpose of the Portal-to-Portal Act as stated in 29 U.S.C. §251:

> The Congress finds that the Fair Labor Standards Act of 1938, as amended [29 U.S.C.A. § 201 et seq.], has been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers with the results that, if said Act as so interpreted or claims arising under such interpretations were permitted to stand, (1) the payment of such liabilities would bring about financial ruin of many employers and seriously impair the capital resources of many others, thereby resulting in the reduction of industrial operations, halting of expansion and development, curtailing employment, and the earning power of employees; (2) the credit of many employers would be seriously impaired; (3) there

would be created both an extended and continuous uncertainty on the part of industry, both employer and employee, as to the financial condition of productive establishments and a gross inequality of competitive conditions between employers and between industries; (4) employees would receive windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay; (5) there would occur the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in; (6) voluntary collective bargaining would be interfered with and industrial disputes between employees and employers and between employees and employees would be created; (7) the courts of the country would be burdened with excessive and needless litigation and champertous practices would be encouraged; (8) the Public Treasury would be deprived of large sums of revenues and public finances would be seriously deranged by claims against the Public Treasury for refunds of taxes already paid; (9) the cost to the Government of goods and services heretofore and hereafter purchased by its various departments and agencies would be unreasonably increased and the Public Treasury would be seriously affected by consequent increased cost of war contracts; and (10) serious and adverse effects upon the revenues of Federal, State, and local governments would occur.

Considering whether the officers are required to change at their employer's is consistent with Congress' purpose in passing the Portal-to-Portal Act because it protects the LRPD from suddenly being forced to compensate the officers. *See, Bamonte*, 598 F.3d at 1231. In the present case, Plaintiff seeks windfall payments for donning and doffing, an activity that is beyond what was agreed to between the City and Fraternal Order of Police. Compensating the officers would not only interfere with this voluntary collective bargaining agreement but it would also create great uncertainty for the City with the potential to greatly deprive the Public Treasury. Therefore, this type of case is a perfect example of the type of claim that Congress wanted to avoid when they enacted the Portal-to-Portal Act.

Since Plaintiff can identify no reason why officers must change at the station to perform their job successfully, and because compensating these officers would conflict with Congress' intent in enacting the Portal-to-Portal Act, the Court grants the Defendant's motion for summary

8

judgment on Plaintiff's claim that the Portal-to-Portal Act requires Defendant to pay them for donning and doffing their uniforms.

**B. LRPD officers are precluded from receiving compensation for donning and doffing of their uniform and safety equipment pursuant to 29 U.S.C. § 203(o)**

Aside from the Portal-to-Portal Act, Defendant argues that the City is entitled to summary judgment pursuant to 29 U.S.C. § 203(o). This section excludes from the definition of hours worked "any time spent in changing clothes or washing at the beginning or end of each workday which was excluded from measured working time during the week involved by the express terms of or by custom or practice under a bona fide collective agreement applicable to the particular employee." 29 U.S.C. § 203(o) (2007). Thus, as the Supreme Court has stated, even if changing clothing was integral and indispensable to an employee's work and therefore compensable under the Portal-to-Portal Act, an employer can opt out of paying for such activity pursuant to their collective bargaining agreement. *Livadas v. Bradshaw*, 512 U.S. 107, 113 (1994).

The City recognizes the Fraternal Order of Police, Lodge #17 ("FOP") as the exclusive representative agent for purposes of collective bargaining to establish wages, benefits, grievance procedures, and other conditions of employment for LRPD officers. Def's. Mot. Summ. J., Ex. A (Gilchrist Aff.) at ¶ 4-5. For over 30 years the City has not compensated officers for donning and doffing their uniforms or safety equipment. *Id.,* Ex. B (Thomas Aff.) at ¶ 18.

1. Changing Clothes

Clothes as used in § 203(o), encompasses the entire uniform worn by LRPD officers with the possible exception of safety equipment. The Eighth Circuit has not addressed whether "changing clothing" includes safety gear. However, other circuits have addressed the question of

whether safety gear ought to be encompassed by the term clothing. The Ninth Circuit in *Alvarez* held that safety gear does not "plainly and unmistakably fit within § 203 (o)'s clothing term. 339 F.3d at 905.[2]  The Ninth Circuit's interpretation seems to reflect the minority view since all other circuits addressing the question have determined that safety gear should be included within the definition of clothes. The Eleventh Circuit in *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 956 (11th Cir. 2007), held that safety gear worn by chicken processing plant employees "fit[s] squarely within the commonly understood definition of 'clothes' as that term is used in § 203(o)." The Fourth Circuit agreed with the Eleventh Circuit in *Sepulveda v. Allen Family Foods*, Inc., 591 F.3d 209, 215 (4th Cir. 2009), holding that the term clothing in § 203(o) includes protective equipment. Finally, the Fifth Circuit has also concluded that safety equipment is encompassed in the definition of clothing as used in 203(o). *Bejil v. Ethicon, Inc.*, 269 F.3d 477, 480 n.3 (5th Cir. 2001).

The DOL, which administers the FLSA, has issued advisory opinions that clothes as stated in § 203 (o) "include[s] items worn on the body for covering, protection or sanitation." Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div. Advisory Op. Ltr. No. FLSA2002-2 (June 6, 2002). The DOL asserted this opinion again after *Alvarez*, concluding that its opinion as to the meaning of clothing had not changed. Fair Labor Standards Act, U.S. Dep't of Labor, Wage & Hour Div., Advisory Op. Ltr. No. FLSA 2007-10 (May 14, 2007). While opinions from 1997 and 2001 do not include protective gear as clothing, the recent opinions are entitled to deference to the extent that they have the power to persuade.

---

[2]Plaintiffs heavily rely on this minority opinion when arguing that safety gear should not be considered clothing.

The Court agrees with the interpretation of clothing as set forth by the DOL and the Fifth, Eleventh and Fourth Circuits and finds that clothes as used in § 203(o) includes safety equipment.[3]  While Congress does not define the term clothing in § 203(o), words in a statute should be interpreted by taking "their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979).  Therefore, the Court must look at the ordinary meaning of clothing when deciding whether protective gear falls under the term. Webster's Third International Dictionary defines "clothes" as "clothing" which in turn is defined as a "covering for the human body or garments in general: all the garments and accessories worn by a person at any one time." Webster's Third International Dictionary 428 (unabridged 1986).[4]  The Court believes that this definition of clothing is compatible with the ordinary and common meaning of the word.  All items worn by officers of the LRPD fit into this definition because they can be characterized either as a garment or an accessory. Therefore, the Court holds that both the uniform and safety equipment fall within the meaning of clothes as used in § 203(o).

2. Custom or Practice Under a Bona Fide Collective Bargaining Agreement ("CBA")

---

[3]The majority of district courts addressing this issue have reached similar conclusions. *See, e.g.*, *Arnold v. Schreiber Foods*, Inc. 690 F. Supp. 2d 672 (M. D. Tenn. 2010) (holding that hard hats, safety glasses, earplugs and hair and beard nets constitute clothing); *Andrako v. U.S. Steel Corp.*, 632 F. Supp. 2d 398 (W.D. Pa. 2009) (holding that protective gear worn by factory employees constituted clothes); *Johnson v. Koch Foods, Inc.*, 670 F. Supp. 2d 657 (E.D. Tenn. 2009) (holding that the term clothes encompasses safety equipment); *Sandifer v. U.S. Steel Corp.*, 2009 WL 34302222, (N.D. Ind. 2009) (stating that protective gear worn by employees falls within the plain meaning of the term clothes); *Hudson v. Butterball, LLC.*, 2009 WL 3486780 (W.D. Mo., 2009) (holding that clothes includes all apparel including those that are accessories); *Sisk v. Sara Lee Corp.*, 590 F. Supp. 2d 1001 (W.D. Tenn. 2008) (holding that personal protective equipment constituted clothing); *Gatewood v. Koch Foods of Miss, LLC.*, 569 F. Supp. 2d 687 (S.D. Miss. 2008) (holding that "sanitary and safety items fit comfortably within the definition of clothes").

[4]Other federal courts deciding this issue have relied on this definition of clothing. *See e.g.*, *Anderson*, 488 F.3d at 955, *Bejil* 269 F. 3d at 480, *Andrako*, 632 F. Supp. 2d 398 at 409, *Johnson*, 670 F. Supp. 2d at 666.

For the past 32 years the City has not compensated officers for donning and doffing their uniform and equipment.  Defendant argues that regardless whether this issue has been raised during negotiations a custom or practice of not compensating officers for changing has been established.

While the Eighth Circuit has not directly addressed the issue whether the parties must raise a matter in negotiations in order to establish a custom,  it has acknowledged that :

> it is impossible for the written collective-bargaining agreement to describe every possible permutation of working conditions which might arise, it is not unusual for the parties to a labor agreement to develop working relationships, customs, and practices which are understood to be the norm, but which are nowhere reduced to a formal contract term. When long-standing practice ripens into an established and recognized custom between the parties, it ought to be protected against sudden and unilateral change as though it were a part of the collective-bargaining agreement itself. *Brotherhood of Maintenance of Way Employees, Lodge 16* v. Burlington, 802 F. 2d 1016 (8th Cir. 1986).

Several other circuits are in agreement that a custom or practice can be established through acquiescence.  In *Turner v. City of Philadelphia*, 262 F. 3d 222 (3rd Cir. 2001), the Third Circuit found that even though correctional officers had not raised the issue of compensation for donning and doffing, a custom had nevertheless been established through "a prolonged period of acquiescence," as the Department of Correction had a 30-year-old policy of non-compensability. The Eleventh Circuit came to a similar conclusion in *Anderson, supra,* holding that a ten-year practice of not compensating employees for changing clothes "satisfies the custom or practice requirement."  Anderson, 488 F. 3d at 959. Finally, the Fifth Circuit in *Allen v. McWane, Inc*. 593. F.3d 449 (5th Cir. 2010), held that regardless of whether the parties had negotiated over-payment for changing clothes, acquiescence for non-payment can occur over a long period of time.

The Court finds that such acquiescence has occurred in this case. It is undisputed that

since at least 1978 Statements of Agreement have been in place between the City and the FOP and that these agreements govern wages, benefits, grievance procedures and other conditions of employment. In addition, it is undisputed that since 1978, a period of over 32 years, the City has not compensated police officers for donning and doffing police uniforms and safety equipment. Furthermore it is clear that during negotiations for the past three Statements of Agreement, a period of ten years, the FOP has never requested compensation for donning and doffing the uniform and safety gear. Absence of negotiation over compensation for donning and doffing does not equate to ignorance of the policy and instead suggests that officers have acquiesced to the practice. *See Anderson*, 488 F. 3d at 959.  Plaintiff also argues that there has not been acquiescence by LRPD officers because officers sued over similar issues in *Treece v. City of Little Rock*, 923 F. Supp. 1122 (E.D. Ark. 1996).  However, Plaintiff misconstrues the issues in that case, as the officers in *Treece* did not sue over donning and doffing of uniforms and safety equipment.  Therefore, the Court finds that a period of 32 years of non-compensability for changing into and out the uniform is sufficient to establish a custom or practice.

Since uniforms and protective gear constitute clothes and because there is a custom of non-payment for changing into and out of uniforms under a bona fide collective bargaining agreement,  Defendant is entitled to summary judgment pursuant to § 203(o).

### C. Time spent polishing shoes, boots and duty belts, cleaning radios and traffic vests and oiling handcuffs are preliminary and postliminary activities and not compensable under the Portal-to-Portal Act

The Supreme Court has long recognized that employees are not entitled to compensation for activities that are preliminary and postliminary. The Supreme Court has held that an activity is not preliminary or postliminary if it is "an integral and indispensable part of the principal

activities." *Steiner*, 350 U.S. at 256. In addition, the Supreme Court has stated that "the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are integral and indispensable to a principal activity under *Steiner*." *Alvarez*, 546 U.S. at 39. (internal quotations omitted).

The Second Circuit has recognized that "indispensable is not synonymous with integral. Indispensable means necessary. ... Integral means, *inter alia*, essential to completeness; organically joined or linked composed of constituents parts making a whole." *Gorman v. Consolidated Edison Corp*. 488 F.3d 586, 592 (2d Cir. 2007)(internal quotations and citations omitted). The court added that "[s]harpening the knife is integral to carving a carcass, *Mitchell v. King Packing Co.,* 350 U.S. 260, 263 (1956); powering up and testing an x-ray machine is integral to taking x-rays, *Kosakow v. New Rochelle Radiology Assocs., P.C.,* 274 F.3d 706, 717-18 (2d Cir.2001); and feeding, training and walking the dog is integral to the work of a K-9 officer, *Reich v. N.Y. City Transit Auth.,* 45 F.3d 646 (2d Cir.1995)." *Id.* Relying on *Gorman*, the Ninth Circuit in *Bamonte* stated that if "an activity is indispensable [it] does not necessarily mean that the activity is integral to the work performed." *Bamonte*, 598 F.3d at 1232. Thus, if an activity is not essential to complete the employee's principal task the employee is not entitled to compensation for the activity pursuant to the Portal-to-Portal Act.

Officers of the LRPD are required to keep their uniform and equipment in good repair but are given the discretion of how often and how to maintain their equipment. While polishing and cleaning may be a necessary or an indispensable component of being a LRPD officer, unlike a butcher sharpening a knife or an x-ray technician powering and testing an x-ray machine, LRPD officers can successfully perform their jobs without polishing and cleaning their uniform and

equipment. Therefore, these activities are not integral or "essential to completeness" and are instead preliminary or postliminary activities.  The officers demonstrate that polishing and cleaning is not an "integral" activity in order to adequately perform their job, since the time and frequency they spent doing so dramatically varies.[5]

It is doubtful that the City ever contemplated paying officers for activities such as shining their shoes and polishing their duty belts and allowing Plaintiff to recover for such activities would only encourage litigation. It goes without saying that every employee spends a certain amount of time preparing for work and if the Court allows Plaintiff to recover in this action employees would feel free to sue for every action that they perform preparing for work.  In addition, compensating the officers for such activities would interfere with the collective bargaining agreement between the City and the FOP and could result in the officers receiving a windfall of payments for activities previously performed.  *See* 29 U.S.C.§ 251.

Since polishing and cleaning are preliminary and postliminary activities and because compensating Plaintiff for such activity would be contrary to Congress' intent pursuant to the Portal-to-Portal Act Defendant is entitled to summary judgment.

**D. Time spent maintaining ballistic vests, cleaning radios, cleaning safety vest, guns**

---

[5]Officer Musticchi testified that he polished and cleaned his duty belt a couple times a month. (Musticchi Dep. 30:25-31:5). He stated that he cleaned his vest "not very often" when mud was splashed on it. (Musticchi Dep. 36:10-22.) He also stated that he cleaned his radio "not very often. (Musticchi Dep. 36:20-2). He testified that it would take him eight minutes to polish his shoes, (four minutes a shoe). (Musticchi Dep. 91:7-20). Officer Ready testified that she would polish a new pair of shows twice a year for "three to four hours" and polish her shoes once or twice a week for twenty five to thirty five minutes after that.  (Ready Dep. 20:1-19). She also stated that she cleaned her belt for two hours once a month. (Ready Dep. 26:12-16). Officers Winfrey stated that he polishes his gun belt "as needed." which amounts to twice a year, for about fifteen minutes. (Winfrey Dep. 14:15-25-15:1-15). He testified that when he was working for Community Oriented Policing he polished his shoes once a week but now that he works at the airport he polishes his shoes once a month and that the process takes approximately fifteen minutes. (Winfrey Dep 15:16-25-16:1-5).

**and oiling handcuffs is de minimis.**

The Supreme Court first recognized the de minimis doctrine in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946).  In *Anderson*, pottery factory workers argued *inter alia* that they were not paid for the time spent walking around the premises. In deciding whether the workers could be paid for the time they spent walking the Supreme Court outlined the de minimis doctrine stating:

> when the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the FLSA. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

The Supreme Court added that when deciding whether the walking time was de minimis that "compensable working time was limited to the *minimum time* necessarily spent in walking at an ordinary rate along the most direct route . . ." *Id.* (emphasis added). Thus, when deciding whether an activity should be considered de minimis the court must look at the minimum time it takes to complete the task.

Most federal courts after *Anderson* have found a time period of ten minutes or less per day to be *de minimis.  See e.g.*, *E.I. du Pont De Nemours & Co. v. Harrup*, 227 F.2d 133, 135-36; *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187, 188 (4th Cir. 1949) (ten minutes employees spent before work at the their work station de minimis); *Carter v. Panama Canal Co.*, 314 F. Supp. 386, 392 (D.D.C. 1970), *aff'd* 463 F.2d 1289 (D.C. Cir. 1972) (holding that the 2 to 15 minutes required to place a check mark by name and walk to duty de minimis).

The DOL has also recognized the de minimis doctrine and has provided guidelines as to when the doctrine should apply:

16

> In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis. This rule applies only where there are uncertain and indefinite periods of time involved of a few seconds or minutes duration, and where the failure to count such time is due to considerations justified by industrial realities. An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's fixed or regular working time or practically ascertainable period of time he is regularly required to spend on duties assigned to him.

29 C.F.R. § 785.47 (internal citations omitted).

Clearly cleaning radios, wiping safety vests and oiling handcuffs are de minimis activities because they take less than ten minutes, in fact they take less than a minute, and the officers themselves acknowledge that they do not perform these activities on a regular basis.[6] Finding that these activities are de minimis is consistent with the standard outlined in *Anderson* and the DOL guidelines as it would be extremely difficult to record these activities for payroll purposes since they occur sporadically. Even considered in the aggregate the time spent on these activities is minimal and no reasonable jury could find that these activities amount to a substantial amount of time.  Defendant is entitled to summary judgment because the time spent cleaning radios, wiping safety vests and oiling handcuff is de minimis..

Plaintiff also seeks compensation for maintaining ballistic vests.  The officers disagree about the time it takes to maintain the ballistic vest.[7]  The vest is compromised of three pieces of

---

[6]Officer Musticchi testified that he cleaned his safety vest only when it got mud on it which is not very often and it would take him less than a minute to clean it. He also stated that he would clean his radio not very often, only when he got in a fight, and that this also took him less than a minute. (Musticchi Dep. 36:13-25-37:1-24). Officer Winfrey stated that he would check his handcuffs periodically and that it would take him a few seconds to inspect them and put oil on them. (Winfrey Dep. 24:3-21).

[7]Officer Musticchi testified that it can take 15 to 20 minutes to disassemble and assemble the vest. (Musticchi Dep. 24:4-5). Officer Ready testified it takes approximately 20 minutes. (Ready Dep. 21:16-18). Officer Winfrey testified the process takes between ten and fifteen minutes. (Winfrey Dep.12: 2-10).

Kevlar ballistic material and a piece of nylon fabric which is called the "carrier." The carrier portion is machine washable- however, the Kevlar material is not machine-washable and must be wiped with a damp cloth. The carrier is made up of two main compartments one in the front and one in back. A piece of Kevlar ("front panel" and "rear panel") can be inserted into each of the compartments which are zipped and unzipped for insertion and removal. The ballistic front panel and rear panel each have two pieces of Velcro attached at the shoulder area. The front panel and rear panel are secured inside the carrier by attaching the Velcro on the ballistic material to pieces of Velcro at the shoulder area that are attached to the interior compartments of the carrier. The third piece of Kevlar is inserted in the inner compartment ("strike plate").

When officers disassemble the vest in order to wash it, they remove the strike plate from the inner compartment, unzip the compartment in the front and the back, pull the pieces of Velcro on the front compartment from the two pieces of Velcro on the front main compartment of the carrier and then remove the front panel from the carrier's front compartment. Officers repeat virtually the same process with the rear panel where they pull the two pieces of Velcro on the rear and separate them from the two piece of Velcro in the rear main compartment of the carrier and then remove the rear panel from the carrier's rear compartment. After washing the carrier portion and wiping the Kevlar portion, officers reassemble the vest by placing the strike plate in the inner compartment placing the front panel inside the front main compartment of the carrier and attaching the Velcro strips at each shoulder and placing the rear panel inside the rear compartment of the carrier and attaching the Velcro strips at each shoulder.

In deciding a motion for summary judgment the court must view the facts in the light most favorable to the nonmoving party. However, the Supreme Court has held that:

> [T]he mere existence of *some* alleged factual dispute between the parties will not
> defeat an otherwise properly supported motion for summary judgment; the
> requirement is that there be no *genuine* issue of *material* fact." *Anderson v.*
> *Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, (1986). When opposing parties tell
> two different stories, one of which is blatantly contradicted by the record, so that
> no reasonable jury could believe it, a court should not adopt that version of the
> facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris,* 550 U.S. 372, 380 (2007).  In holding that there was no genuine issue of material

fact the Supreme Court heavily relied on the fact that there was a videotape capturing the events

in question which clearly contradicted the story told by the respondent. The Supreme Court

concluded that "[r]espondent's version of events is so utterly discredited by the record that no

reasonable jury could have believed him." *Scott*, 550 U.S. at 380.

   While the officers in this case disagree about the time it takes to assemble and

disassemble the vest,[8] Defendant has presented videotape evidence showing two different

officers assembling and disassembling the vest in less than two minutes.  The Court finds this

videotape to be persuasive and believes that this videotape so discredits the Plaintiff's testimony

as to the time it takes to assemble and disassemble the vest that no reasonable jury could believe

that it takes more than ten minutes to assemble and disassemble the vest. *Id.* Since the officers'

testimony is blatantly contradicted by the record the Court will not adopt this version of the facts

for purposes of ruling on the motion for summary judgment.

   While the Court believes that there is no genuine issue of material fact as to the time it

takes to assemble and disassemble the vest even if these specific officers do take more than ten

minutes to assemble and disassemble the vest, pursuant to the standard outlined in *Anderson*, the

---

[8]Officer Musticchi and Officer Ready both testified that it would take twenty minutes to assemble
and disassemble the vest. (Musticchi Dep. 22:8-21); (Ready Dep. 21:17-25), whereas officer Winfrey
testified that it takes ten to fifteen minutes to assemble and disassemble the verst (Winfrey Dep. 12:2-10).

Court must look at the *minimum time* it takes to assemble and disassemble the vest. *Anderson,* *328 U.S. at 692.*  Compensating officers who take longer to complete the task would reward workers who are less efficient and encourage workers to work slower in the future. Instead, because officers can assemble and disassemble the vest in less than two minutes the activity must be considered de minimis.

Finding that maintaining the ballistic vest is de minimis is consistent with the standards outlined by the Supreme Court in *Anderson* and the DOL. There is no regularity as to the time the officers spent cleaning their vests[9] and it would be practically impossible for the City to calculate this time for payroll purposes. Thus, for all the reasons previously stated Defendants are entitled to summary judgment for maintaining the ballistic vest.

Finally, Plaintiff alleges that the class is entitled to overtime for maintaining their weapons. Again, the officers disagree as to the time and frequency they maintain their weapons. Officer Winfrey testified that he removes the bullets of his magazine once a year and that the process takes ten to fifteen minutes.  Def's. Mot. Summ J., Ex. H (Winfrey Dep.) at 25:8-22. Officer Ready testified that this process takes fifteen to twenty minutes and she does this process once a week.  *Id.* Ex. G (Ready Dep.) at 21:2-11.   In addition she claimed she cleaned her weapon once a week and that took her twenty to thirty minutes.  *Id*. at  21:11-15). Officer Musticchi testified that he cleaned and reloaded his weapon once a week and that the process took him five to ten minutes.  *Id.* Ex. F (Musticchi Dep.) at 39:24-25-40:1-5. However,  pursuant to the standard outlined in *Anderson* the Court will again look at the *minimum time* it takes to

---

[9]Officer Winfrey testified he only cleans his vest twice a year (Winfrey 21:7-8), whereas Officer Ready claimed she cleans her vest three to four times per week (Ready Dep. 33:15-18), and Officer Musticchi testified he cleans his vest twice a week during the winter months and three to four times to every day in the summer months (Musticchi Dep. 24:6-25).

clean the weapon and remove the bullets from the magazine. It is clear according to testimony

that cleaning the weapon is de minimis since the process can be accomplished in ten minutes or

less. In addition, the process of removing the bullets out of the magazine is also de minimis since

the process takes around ten minutes. The Court will not reward those employees who take more

than the time required to complete the task nor will it penalize those employees who can

complete the process efficiently. Thus, the Court finds that no reasonable jury could find that

these activities are not de minimis. In addition the Court finds this ruling to be consistent with

the standards outlined in *Anderson* and by the DOL since even if an officer takes longer than ten

minutes to a weapon it would be extremely difficult to record these activities for payroll

purposes since the officers themselves demonstrate that the time and frequency that officers of

the LRPD performs these activities dramatically varies. Therefore, Defendant is entitled to

summary judgment for maintaining and cleaning  weapons.

**E.  Missed Meal Breaks and Travel Time**

Plaintiff moves for voluntary dismissal without prejudice of his claims for compensation

for time spent commuting to work at any time a LRPD officer is within the Little Rock city

limits and during an officer's lunch break, or lack thereof.  Plaintiff says he wishes to dismiss

these claims in order to "narrow certain issues." Defendant objects to dismissal without

prejudice.

Under Fed.R.Civ.P. 41(a)(2), a plaintiff who wishes to dismiss an action after an answer

has been filed  must obtain an order of the district court unless all the parties stipulate to the

dismissal.  Dismissal is within the discretion of the trial court, and the court may impose terms

and conditions on the dismissal.  In determining whether to grant a plaintiff's motion for

voluntary dismissal, a district court should consider the following factors: (1) whether the plaintiff has presented a proper explanation for the desire to dismiss; (2) whether the defendant has expended considerable effort and expense in preparing for trial; (3) whether the plaintiff exhibited "excessive delay and lack of diligence" in prosecuting the case; and (4) whether the defendant has filed a motion for summary judgment. *Paulucci v. City of Duluth,* 826 F.2d 780, 782 (8th Cir. 1987).  The Court also considers whether the dismissal would "result in a waste of judicial time and effort." *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.,*187 F.3d 941, 950 (8th Cir. 1999).

Defendant has expended considerable effort and expenses in preparing for trial, including the hiring of an expert, and filed a motion for summary judgment.  Plaintiff fails to present a proper explanation for his desire to dismiss the claims.  In light of the Court's findings on Plaintiff's other claims, it is doubtful he would be successful on the claims he seeks to voluntarily dismiss.  However, Plaintiff did not brief his response to the City's motion for summary judgment on the travel time and meal break claims, apparently because the motion for voluntary dismissal was pending.[10]   The Court directs Plaintiff to file a response to the City's motion for summary judgment on these two claims within seven (7) days from the date of entry of this Order.  Failure to do so will result in the dismissal with prejudice of the travel and lunch break claims.

## IV. Conclusion

For the reasons set forth above Defendant's motion for summary judgment [docket entry 64] is granted in part at this time.  Plaintiff's motion for voluntary dismissal [docket entry 68]

---

[10]See Pl's. Resp. to Def's. Mot. Summ. J. [doc. # 83] at n.1.

and motion for partial summary judgment [docket entry 71] are denied.[11]

SO ORDERED this 24th day of August, 2010.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[11]Defendant's motion for decertification of the class [doc. # 69] is moot.